THE HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

MICHELLE WISE, individually and on behalf
of all others similarly situated,

              Plaintiff,

    v.

RING LLC, a Delaware limited liability
company,

              Defendant.

NO. 2:20-cv-01298-JCC

**FIRST AMENDED CLASS ACTION
COMPLAINT**

**JURY DEMAND**

      Plaintiff, Michelle Wise ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant Ring LLC ("Ring"), for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and alleges as follows:

## NATURE OF ACTION

      1.      Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Ring in collecting, storing, and using Plaintiff's and other similarly-situated individuals' biometric identifiers[1] and biometric information[2] (collectively, "biometrics"), without informed written consent, in direct violation of the BIPA.

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA, and "face geometry," among others.
[2] "Biometric information" is any information captured, converted, stored, or shared based on a person's biometric identifier used to identify an individual.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

2.      Ring, which was purchased by Amazon in early 2018 for more than $1 billion, develops and sells Video Doorbells, which are "smart doorbells" that allow homeowners to remotely communicate with visitors standing near the doorbell.  Homeowners can see, hear, and speak to visitors from the homeowners' phone, tablet, and PC.  In addition to other features, the Video Doorbell allows homeowners to automatically receive alerts and high definition, live-video footage of visitors at their home as soon as the Video Doorbell detects motion or when visitors press the Video Doorbell.  Users also have the option to store and save video footage of their visitors taken by the Video Doorbell.  In addition to Video Doorbells, Ring develops and sells Stick Up Cams (collectively with Video Doorbells, "Ring Cameras"), which can be placed inside or outside the home and which allow for real-time mobile notifications, live HD video, and two-way voice communication between the homeowners and visitors through the Stick Up Cams.

3.      In November of 2018, Ring filed patent application material that describes an advanced system of facial recognition that police and other law enforcement personnel can use to match the faces of people walking by Ring Cameras with a photo database of persons who are deemed "suspicious."[3]  Ring's described facial recognition technology would also allow the program to scan anyone passing a home for photos of suspicious people uploaded by a homeowner and, upon a match, the person's face could be automatically sent to law enforcement.[4]  Likewise, homeowners can place photographs of other individuals on an authorized persons list.[5]  Moreover, by compiling videos from separate Ring Cameras located at different angles as visitors walk past, Ring anticipates that its facial recognition software will

---

[3] *See Amazon's Disturbing Plan to Add Face Surveillance to Your Front Door*, American Civil Liberties Union (2018), *available at* https://www.aclu.org/blog/privacy-technology/surveillance-technologies/amazons-disturbing-plan-add-face-surveillance-yo-0 (last visited Mar. 20, 2020) ("ACLU Article").
[4] *See id.*
[5] *See Amazon may want to identify burglars with facial recognition tech*, CNN (2018), *available at* https://www.cnn.com/2018/11/30/tech/amazon-patent-doorbell-facial-recognition/index.html (last visited Mar. 20, 2020) ("CNN Article").

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

even be able to identify faces that are partially obscured.[6]  Jacob Snow, a technology and civil liberties attorney with the American Civil Liberties Union, has referred to Ring's proposed surveillance system as "Amazon's Disturbing Plan to Add Face Surveillance to Your Front Door,"[7] and has stated that "[p]eople have the right to go about their daily lives without being watched and tracked."[8]

4.       In the context of Ring's subpar security and privacy practices, it has come to light that Ring shares with its employees the video footage captured from all of its customers' Ring Cameras and uses that footage to bolster Ring's facial recognition technology.  Sources familiar with Ring's practices have disclosed that Ring stores the video "public" feeds from its customers' Ring Cameras in unencrypted format and allows staff around the world to have essentially unfettered access to these videos.[9]  In particular, a Ukrainian research team charged with improving Ring's facial recognition tools as part of its push to turn Ring Cameras into a private surveillance grid (upon information and belief, the surveillance plan Ring proposed in its recent patent filing), has had "virtually unfettered" access to *every* Ring customer's camera videos.[10]  Upon information and belief, Ring has been capturing and using the facial geography of individuals appearing in these videos for years.[11]

5.       In response to these allegations, Ring conceded that it viewed and annotated[12] certain videos from users who have publicly shared the video on a related Ring application and who have consented to Ring's use of the videos.[13]  Regardless of whether Ring received

---

[6] *See* ACLU Article.
[7] *See id*.
[8] *See* CNN Article.
[9] *Whistleblower: Amazon Ring stores your doorbell and home video feeds unencrypted and grants broad "unfettered" access to them*, BoingBoing.net, available at https://boingboing.net/2019/01/10/surveillance-a-go-go.html (last visited April 15, 2019); *For Owners of Amazon's Ring Security Cameras, Strangers May Have Been Watching Too*, TheIntercept.com, *available at* https://theintercept.com/2019/01/10/amazon-ring-security-camera/ (last visited March 20, 2020).
[10] *Id*.
[11] *For Owners of Amazon's Ring Security Cameras, Strangers May Have Been Watching Too*, TheIntercept.com, *available at* https://theintercept.com/2019/01/10/amazon-ring-security-camera/ (last visited Mar. 20, 2020) ("TheIntercept Article").
[12] That is, that it drew boxes around or otherwise tagged visitors that appeared in video footage.
[13] *See* TheIntercept Article.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

permission from its users to utilize their biometric information to develop its facial recognition abilities, it never sought – or received – permission from visitors and other non-customer third-parties who appeared in the videos and whose biometric data was taken and used by Ring.

6.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

7.     In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which was recently selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias" (740 ILCS 14/5(b)) – the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like Ring may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used; (3) receives a written release from the person for the collection of his or her biometric identifiers or information; and (4) publishes publicly-available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information.  740 ILCS 14/15(a)-(b).

8.     In direct violation of each of the foregoing provisions of § 15(a) and § 15(b) of the BIPA, Ring is actively collecting, storing, and using – without providing notice, obtaining informed written consent, or publishing data retention policies – the biometrics of millions of

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

unwitting individuals whose faces appear in video footage captured by Ring Cameras and stored by Ring.

9.      Specifically, upon information and belief, Ring has created, collected, and stored millions of "face templates" – highly detailed geometric maps of the face – from countless Illinois residents whose faces were captured by Ring Cameras. Ring then uses the analysis to further develop its own facial recognition software, likely in an effort to achieve the facial recognition functionality proposed in its recent patent filing.  Each face template that Ring extracts is unique to a particular individual in the same way that a fingerprint or voiceprint uniquely identifies one, and only one, person.

10.      Plaintiff brings this action individually and on behalf of all others similarly situated to prevent Ring from further violating the privacy rights of members of the public whose faces have appeared in footage captured by Ring Cameras in Illinois, and to recover statutory damages for Ring's unauthorized collection, storage, and use of these individuals' biometrics in violation of the BIPA.

## JURISDICTION AND VENUE

11.      In removing this action to federal court, Ring asserted that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the amount in controversy is more than $5 million, exclusive of interest and costs, and this matter is a class action and certain Class members are citizens of a different state than is Defendant Ring LLC.

12.      In order to establish the $5 million amount in controversy required for jurisdiction under CAFA, Ring relied upon an assumption that there are at least 1,000 residents of Illinois who are not Ring customers and whose faces appear in video footage captured by Ring Cameras. Dkt. No. 9 at ¶ 18.

13.      Ring admits that Plaintiff has standing under Article III of the U.S. Constitution because "the statutory provisions at issue in BIPA are established to protect an individual's concrete interests in privacy." Dkt. No. 9at, ¶¶ 19-21. Plaintiff's allegations are sufficient to

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  establish standing under the Ninth Circuit's decision in *Patel v. Facebook, Inc.*, 932 F.3d 1264,

2  1273–74 (9th Cir. 2019).  Dkt. No. 9at, ¶¶ 19-21.

3        14.     Defendant Ring LLC is within the jurisdiction of this Court. Defendant is a

4  citizen of Washington State and has availed itself of the privilege of conducting business

5  activities within the State of Washington.

6        15.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because

7  Defendant's principal place of business is located in King County and Defendant therefore

8  resides in King County.

9  **PARTIES**

10        16.     Plaintiff is, and has been at all relevant times, a resident and citizen of Vernon

11  Hills, Illinois.

12        17.     Ring is a Delaware limited liability company with its principal place of business at

13  410 Terry Avenue North, Seattle, Washington 98109.

14  **FACTUAL BACKGROUND**

15  **I.**     **Biometric Technology Implicates Consumer Privacy Concerns**

16        18.     "Biometrics" refers to unique physical characteristics used to identify an

17  individual.  One of the most prevalent uses of biometrics is in facial recognition technology,

18  which works by scanning a human face or an image thereof, extracting facial feature data

19  based on specific "biometric identifiers" (*i.e.*, details about the face's geometry as determined

20  by facial points and contours), and comparing the resulting "face template" (or "faceprint")

21  against the face templates stored in a "face template database."  If a database match is found,

22  an individual may be identified.

23        19.     The use of facial recognition technology in the commercial context presents

24  numerous consumer privacy concerns.  During a 2012 hearing before the United States Senate

25  Subcommittee on Privacy, Technology, and the Law, U.S. Senator Al Franken stated that "there

26  is nothing inherently right or wrong with [facial recognition technology, but] if we do not stop

1   and carefully consider the way we use [it], it may also be abused in ways that could threaten

2   basic aspects of our privacy and civil liberties."[14]  Senator Franken noted, for example, that

3   facial recognition technology could be "abused to not only identify protesters at political

4   events and rallies, but to target them for selective jailing and prosecution."[15]

5        20.     The Federal Trade Commission ("FTC") has raised similar concerns, and

6   recently released a "Best Practices" guide for companies using facial recognition technology.[16]

7   In the guide, the FTC underscores the importance of companies' obtaining affirmative consent

8   from consumers before extracting and collecting their biometric identifiers and biometric

9   information from digital photographs.

10  **II.    Illinois's Biometric Information Privacy Act**

11       21.     In 2008, Illinois enacted the BIPA due to the "very serious need [for]

12  protections for the citizens of Illinois when it [comes to their] biometric information."  Illinois

13  House Transcript, 2008 Reg. Sess. No. 276.  The BIPA makes it unlawful for a company to, *inter*

14  *alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a

15  customer's biometric identifiers[17] or biometric information, unless it first:

16                 (l) informs the subject . . . in writing that a biometric identifier or

17                 biometric information is being collected or stored;

18                 (2) informs the subject . . . in writing of the specific purpose and

19                 length of term for which a biometric identifier or biometric
               information is being collected, stored, and used; and

20

21

---

22  [14] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012), *available*

23  *at* https://www.eff.org/files/filenode/jenniferlynch_eff-senate-testimony-face_recognition.pdf (last visited Mar. 20, 2020).

24  [15] *Id*.
[16] *Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade

25  Commission (Oct. 2012), *available at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf (last visited

26  Mar. 1, 2016).
[17] BIPA's definition of "biometric identifier" expressly includes information collected about the geometry of the face (i.e., facial data obtained through facial recognition technology).  *See* 740 ILCS 14/10.

FIRST AMENDED CLASS ACTION COMPLAINT - 7
CASE NO. 2;20-cv-01298-JCC

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15 (b).

22.    Section 15(a) of the BIPA also provides:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

23.    As alleged below, Ring's practices of collecting, storing, and using individuals' biometric identifiers and information -- derived from videos taken and uploaded in Illinois without informed written consent -- violate all three prongs of § 15(b) of the BIPA.  Ring's failure to provide a publicly-available written policy regarding its schedule and guidelines for the retention and permanent destruction of individuals' biometric information also violates § 15(a) of the BIPA.

### III.    Ring Violates Illinois's Biometric Information Privacy Act

24.    Ring stores and uses the video footage captured from its users' Ring Cameras.[18]

25.    Ring acknowledges that this footage may be used to collect the biometric identifiers and/or biometric information of individuals whose faces are captured by its Cameras.[19]  As late as 2019, Ring's privacy policy stated that "you may choose to use additional

---

[18] *See, e.g.,* https://ring.com/terms ("User Recordings may be stored by Ring in order to comply with certain legal obligations"); https://shop.ring.com/pages/privacy-notice ("To provide you with these services, we obtain content (and related information) that is captured and recorded when using our products and services, such as video or audio recordings, live video or audio streams, images, comments, and data our products collect from their surrounding environment to perform their functions (such as motion, events, temperature and ambient light")")

[19] *See* Ring Privacy Notice, https://shop.ring.com/pages/privacy-notice ("Capturing, recording or sharing video or audio content that involves other people, *or capturing other*[] *peoples' facial feature information*, may affect their privacy rights") (emphasis added)

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

functionality in your Ring product that, through video data from your device, can recognize facial characteristics of familiar visitors."

26.     Not only are Ring Cameras capable of capturing these biometric identifiers and/or information, Ring itself has assigned teams to manually tag individuals appearing in this video footage so that its software can capture biometric data from the video, including the tagged individual's facial geography, and use it to bolster its own facial recognition technology. Ring does so without seeking or receiving consent of every individual appearing in this video footage.

27.     As The Intercept and The Information reported in 2019, Ring was "mishandling videos collected by its line of smart home devices," which were being reviewed by human employees based in Ukraine to further develop artificial intelligence capabilities.[20]  The Intercept explained:

> Ring used its Ukrainian "data operators" as a crutch for its lackluster artificial intelligence efforts, manually tagging and labeling objects in a given video as part of a "training" process to teach software with the hope that it might be able to detect such things on its own in the near future. This process is still apparently underway years later: Ring Labs, the name of the Ukrainian operation, is still employing people as data operators, according to LinkedIn, and posting job listings for vacant video-tagging gigs.[21]

28.     These tasks involved annotating every object in the Ring Cameras' frame, including humans:

---

[20] *Reports raise video privacy concerns for Amazon-owned Ring*, TECHCRUNCH (Jan. 10, 2019), https://techcrunch.com/2019/01/10/amazon-ring-privacy-concerns/ (last accessed Oct. 12, 2020).

[21] https://theintercept.com/2019/01/10/amazon-ring-security-camera/ (last accessed October 12, 2020).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com



29.     According to Ring Ukraine's website, "[w]e develop semi-automated crime prevention and monitoring systems *which are based on, but not limited to, face recognition*."[22] Ring Labs even went so far as to hire a "head of facial recognition research."[23]

---

[22] https://web.archive.org/web/20190523100219/https://ring-ukraine.com/#ring-research (last accessed October 12, 2020).

[23] https://foundation.mozilla.org/en/privacynotincluded/products/ring-video-doorbell/ (last accessed October 12, 2020).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    30.      According to a March 2018 presentation by Oleksandr Obiednikov,[24] Ring

2  Ukraine's "Head of Face Recognition Research," Ring employs advanced technology to collect,

3  capture, analyze, and identify specific human facial features:











[24] https://www.slideshare.net/lvivstartup/oleksandr-obiednikov-affine-transforms-and-how-cnn-lives-with-them (last accessed October 12, 2020).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

31.     Ring has developed this technology in order to be able to detect and identify specific individuals.  In November 2018, Ring filed two patent applications that describe technology with the ability to identify "suspicious people" and create a "database of suspicious persons."[25]  One patent applications describes how cameras could be used to piece together a composite image of an individual's face, giving homeowners and police the ability to more easily identify someone who has engaged in potential criminal activity.[26]  The patent's inventor is identified as Jamie Siminoff, the chief executive of Ring.

32.     The patent makes clear Ring's intent and capability to employ facial recognition technology on both users and unsuspecting third parties.[27]  The application goes into great detail regarding the current state of facial recognition technology, noting that "[v]arious types of facial recognition exist, some or all of which may be used in the present embodiments . . . . The present embodiments may use any one, or any combination of more than one, of the foregoing biometrics to identify and/or authenticate a person who is either suspicious or who is authorized to take certain actions with respect to a property . . . ."

33.     After analyzing someone's facial features and contacting homeowners, the application says, the visitor could be added to an "authorized list" or a database of "suspicious persons."

34.     Ring has partnered with over a thousand local law enforcement agencies across the country.

---

[25] https://www.buzzfeednews.com/article/nicolenguyen/amazon-ring-facial-recognition-ukraine (last accessed October 12, 2020).

[26] https://www.washingtonpost.com/technology/2018/12/13/this-patent-shows-amazon-may-seek-create-database-suspicious-persons-using-facial-recognition-technology/ (last accessed October 12, 2020).

[27] See https://www.aclunc.org/docs/Amazon_Patent.pdf (last accessed October 12, 2020) ("Abstract") ("The first image data and the second image data may be analyzed to determine a person depicted in the first image data and a person depicted in the second image data is the same person")

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

35.     Ring provides free Ring Cameras to law enforcement agencies that promote Ring's services, including its Neighbors app, which allows Ring Camera owners to share information about "suspicious" persons with others in the community.

36.     Ring also operates a Law Enforcement Neighborhood Portal that provides officers a map of homes with Ring cameras and allows law enforcement officers to easily request video footage from Ring users.[28]  The camera owner can simply click a link to share video footage from their camera with local police.  While the camera owner decides whether to provide footage, other people whose faces are captured in that footage neither receive notice nor provide consent to such sharing because Ring fails to comply with the notice and consent requirements of BIPA.

37.     Further, the American Civil Liberties Union has raised concerns over law enforcement's potential use of facial recognition software in Ring devices.  Ring's parent company, Amazon, already sells facial recognition software called Rekognition to police departments.

38.     Ring also offers a "Persistent Visitors" feature which "helps identify people who are loitering about your property."[29]  This feature also allows a notification for people who spend extended time in the camera's field of view.

39.     Upon information and belief, unbeknownst to visitors they appear in Ring Cameras' video footage, and, in direct violation of § 15(b)(1) of the BIPA, Ring's facial recognition technology scans each and every face that has been tagged by its team members, extracts geometric data relating to the unique points and contours (*i.e.*, biometric identifiers) of each face, and then uses that data to improve Ring's facial recognition technology – all without ever informing anyone of this practice.

---

[28] *Id.*

[29] https://support.ring.com/hc/en-us/articles/360036470851-Persistent-Visitors-Information.

FIRST AMENDED CLASS ACTION COMPLAINT - 13
CASE NO. 2;20-cv-01298-JCC

40.     In direct violation of §§ 15(b)(2) and 15(b)(3) of the BIPA, Ring never informed Illinois residents who had their face templates collected of the specific purpose and length of time for which their biometric identifiers or information would be collected, stored, and used, nor did Ring obtain a written release from any of these individuals.

41.     Ring's "Neighbors" App allows users to post videos of people that were captured in or around their homes and send those videos to all of their "neighbors."

42.     Finally, Ring has specially configured Ring Cameras to comply with the European Union's more robust privacy protections.  On information and belief, Ring has the technology that would enable it to provide notice of recording and other enhanced protections for class members' unique biometric identifiers or biometric information.

43.     In direct violation of § 15(a) of the BIPA, Ring does not have written, publicly-available policies identifying their retention schedules, or guidelines for permanently destroying any of these biometric identifiers or information.

**IV.     Plaintiff's Experience**

44.     Plaintiff does not have, and has never had, an account or other contractual relationship with Ring, nor has Plaintiff ever owned or used a Ring Camera.

45.     Between January 1, 2019 and March 18, 2020, Plaintiff visited several homes in Illinois at which a Ring Camera was installed and, on each occasion, has appeared in the video footage taken by the Ring Cameras.  Upon information and belief, Ring has accessed and used this video footage by identifying Plaintiff as she appears in the videos and has captured her biometric data by allowing its facial recognition software to scan her facial features, including the contours of her face, and the distances between her eyes, nose, and ears.

46.     The resulting biometric data Ring captured, and the process by which its facial recognition program captured the biometric data, was then used to improve the capabilities of its facial recognition software.

FIRST AMENDED CLASS ACTION COMPLAINT - 14
CASE NO. 2;20-CV-01298-JCC

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

47.     Plaintiff never consented, agreed, or gave permission – written or otherwise – to Ring for the collection or storage of her unique biometric identifiers or biometric information.

48.     Further, Ring never provided Plaintiff with, nor did she ever sign a written release, allowing Ring to collect or store her unique biometric identifiers or biometric information.

49.     Likewise, Ring never provided Plaintiff with an opportunity to prohibit or prevent the collection, storage, or use of her unique biometric identifiers or biometric information, nor does Ring have any guidelines in place for permanently destroying any of her biometric identifiers or information.

50.     Nevertheless, when Plaintiff appeared before the Ring Cameras, Ring took that video footage, captured her facial geometry without her knowledge, and used it to improve its facial recognition technology, all in direct violation of the BIPA.

## CLASS ALLEGATIONS

51.     **Class Definition**: Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case as a class action on behalf of the Class defined as follows:

> All Illinois residents who had their biometric identifiers, including scans of their facial geometry, collected, captured, received, or otherwise obtained by Ring from videos or other visual media captured by a Ring Camera.

The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Ring, its subsidiaries, parents, successors, predecessors, and any entity in which Ring or its parent has a controlling interest (as well as current or former employees, officers and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Ring's counsel; (6) the legal representatives, successors, and assigns of any such excluded persons; and (7) any Illinois resident who has purchased a Ring Camera.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

52.     **Numerosity**: Given that the number of persons within the Class includes essentially all individuals who have passed by any home with a Ring Camera, that number is undoubtedly substantial.  It is, therefore, impractical to join each member of the Class as named plaintiffs.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Defendant has custody and control of information about purchasers of Ring doorbells and about the visitors whose unique biometric identifiers or biometric information was retained.

53.     **Commonality and Predominance**: There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

(a)     whether Ring collected or otherwise obtained Plaintiff's and the Class members' biometric identifiers or biometric information;

(b)     whether Ring properly informed Plaintiff and the Class members that it collected, used, and stored their biometric identifiers or biometric information;

(c)     whether Ring obtained a written release (as defined in 740 ILCS 1410) to collect, use, and store Plaintiff's and the Class members' biometric identifiers or biometric information;

(d)     whether Ring developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    collecting or obtaining such identifiers or information has been satisfied or

2    within three years of their last interaction, whichever occurs first;

3    (e)    whether Ring used Plaintiff's and the Class members' biometric identifiers or

4    biometric information to identify them; and

5    (f)    whether Ring's violations of the BIPA were committed intentionally,

6    recklessly, or negligently.

7    54.    **Adequate Representation**: Plaintiff has retained and is represented by qualified

8    and competent counsel who are highly experienced in complex consumer class action

9    litigation. Plaintiff and her counsel are committed to vigorously prosecuting this class action.

10   Neither Plaintiff nor her counsel have any interest adverse to, or in conflict with, the interests

11   of the absent members of the Class.  Plaintiff is able to fairly and adequately represent and

12   protect the interests of the Class.  Plaintiff has raised viable statutory claims of the type

13   reasonably expected to be raised by members of the Class and will vigorously pursue those

14   claims.  If necessary, Plaintiff may seek leave of this Court to amend this Complaint to include

15   additional Class representatives to represent the Class, or additional claims as may be

16   appropriate.

17   55.    **Superiority**: A class action is superior to all other available methods for the fair

18   and efficient adjudication of this controversy because individual litigation of the claims of all

19   Class members is impracticable.  Even if every member of the Class could afford to pursue

20   individual litigation, the court system could not, and it would be unduly burdensome to the

21   courts in which individual litigation of numerous cases would proceed.  Individualized litigation

22   would also present the potential for varying, inconsistent, or contradictory judgments, and

23   would magnify the delay and expense to all parties and to the court system resulting from

24   multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class

25   action, with respect to some or all of the issues presented herein, presents few management

26   difficulties, conserves the resources of the parties and of the court system, and protects the

1  rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this

2  action as a class action.  Class-wide relief is essential to compel compliance with the BIPA.

**FIRST CAUSE OF ACTION**

**Violation of 740 ILCS 14/1, *et seq.***

**(On Behalf of Plaintiff and the Class)**

6      56.      Plaintiff incorporates the foregoing allegations as if fully set forth herein.

7      57.      The BIPA makes it unlawful for any private entity to, among other things,

8  "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a

9  customer's biometric identifiers or biometric information, unless it first: "(1) informs the

10  subject . . . in writing that a biometric identifier or biometric information is being collected or

11  stored; (2) informs the subject . . . in writing of the specific purpose and length of term for

12  which a biometric identifier or biometric information is being collected, stored, and used; and

13  (3) receives a written release executed by the subject of the biometric identifier or biometric

14  information. . . ."  740 ILCS 14/15(b).

15      58.      Ring is a Delaware limited liability company and thus qualifies as a "private

16  entity" under the BIPA.  *See* 740 ILCS 14/10.

17      59.      Plaintiff and Class members are individuals who had their "biometric identifiers"

18  and "biometric information," including scans of their facial geometry, collected, captured,

19  received, or otherwise obtained by Ring from videos that were taken by Ring Cameras from

20  within the state of Illinois.  *See* 740 ILCS 14/10.

21      60.      Ring systematically and automatically collected, used, and stored Plaintiff's and

22  Class members' biometric identifiers and/or biometric information without first obtaining the

23  written release required by 740 ILCS 14/15(b)(3).

24      61.      In fact, Ring failed to properly inform Plaintiff or the Class in writing that their

25  biometric identifiers and/or biometric information was being "collected or stored" by Ring, nor

26  did Ring inform Plaintiff or Class members in writing of the specific purpose and length of term

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  for which their biometric identifiers and/or biometric information was being "collected, stored

2  and used," as required by 740 ILCS 14/15(b)(1)-(2).

3     62.    In addition, Ring does not publicly provide a retention schedule or guidelines for

4  permanently destroying the biometric identifiers and/or biometric information of Plaintiff or

5  Class members, as required by the BIPA.  *See* 740 ILCS 14/15(a).

6     63.    By collecting, storing, and using Plaintiff's and the Class members' biometric

7  identifiers and biometric information as described herein, Ring violated the rights of Plaintiff

8  and each Class member to keep private these biometric identifiers and biometric information,

9  as set forth in BIPA.

10     64.    Individually and on behalf of the proposed Class, Plaintiff seeks: (1) injunctive

11 and equitable relief as is necessary to protect the interests of Plaintiff and the Class by

12 requiring Ring to comply with the BIPA's requirements for the collection, storage, and use of

13 biometric identifiers and biometric information as described herein; (2) statutory damages for

14 each intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20 (2), or

15 alternatively, statutory damages pursuant to 740 ILCS 14/20(1) if the Court finds that Ring's

16 violations were negligent; and (3) reasonable attorneys' fees, costs, and other litigation

17 expenses pursuant to 740 ILCS 14/20(3).

18                    **PRAYER FOR RELIEF**

19     WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully

20 requests that this Court enter an Order:

21     A.    Certifying this case as a class action on behalf of the Class defined above,

22 appointing Plaintiff as representative of the Class and appointing her counsel as Class Counsel;

23     B.    Declaring that Ring's actions, as set out above, violate the BIPA, 740 ILCS l4/1, *et*

24 *seq.*;

25

26

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    C.    Awarding statutory damages for each and every intentional and reckless

2 violation of the BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages

3 pursuant to 740 ILCS 14/20(1) if the Court finds that Ring's violations were negligent;

4    D.    Awarding injunctive and other equitable relief as is necessary to protect the

5 interests of the Class, including, *inter alia*, an Order requiring Ring to collect, store, and use

6 biometric identifiers or biometric information in compliance with the BIPA;

7    E.    Awarding Plaintiff and the Class their reasonable litigation expenses and

8 attorneys' fees;

9    F.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

10 allowable; and

11    G.    Awarding such other and further relief as equity and justice may require.

12                          **DEMAND FOR JURY TRIAL**

13 Plaintiff hereby demands a trial by jury.

14 RESPECTFULLY SUBMITTED AND DATED this 16th day of October, 2020.

15                          TERRELL MARSHALL LAW GROUP PLLC

16

17                          By: /s/ Beth E. Terrell, WSBA #26759
18                              Beth E. Terrell, WSBA #26759
                                Email: bterrell@terrellmarshall.com
19                              Adrienne D. McEntee, WSBA #34061
                                Email: amcentee@terrellmarshall.com
20                              Blythe H. Chandler, WSBA #43387
21                              Email: bchandler@terrellmarshall.com
                                Benjamin M. Drachler, WSBA #51021
22                              Email: bdrachler@terrellmarshall.com
                                936 North 34th Street, Suite 300
23                              Seattle, Washington 98103-8869
                                Telephone: (206) 816-6603
24                              Facsimile: (206) 319-5450

25

26

FIRST AMENDED CLASS ACTION COMPLAINT - 20
CASE NO. 2;20-cv-01298-JCC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Katrina Carroll
Email: kcarroll@carlsonlynch.com
Kyle A. Shamberg
Email: kshamberg@carlsonlynch.com
CARLSON LYNCH, LLP
111 W. Wacker Drive, Suite 1240
Chicago, Illinois 60602
Telephone: (312) 750-1265

Natalie F. Finkelman
Email: nfinkelman@sfmslaw.com
Jayne A. Goldstein
Email: jgoldstein@sfmslaw.com
James C. Shah, *Admitted Pro Hac Vice*
Email: jshah@sfmslaw.com
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
1845 Walnut Street, Suite 806
Philadelphia, Pennsylvania 19103
Telephone: (877) 891-9880

*Attorneys for Plaintiff and the Putative Class*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1      CERTIFICATE OF SERVICE

2          I, Beth E. Terrell, hereby certify that on October 16, 2020, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the following:

5          Jaime Drozd Allen, WSBA #35742
           Email: jaimedrozdallen@dwt.com
6          David Maas, WSBA #50694
           Email: davidmaas@dwt.com
7          DAVIS WRIGHT TREMAINE LLP
           920 Fifth Avenue, Suite 3300
8          Seattle, Washington 98104-1610
           Telephone: (206) 757-8039
9          Facsimile: (206) 757-7039
10

11         Elizabeth B. Herrington
           Email: beth.herrington@morganlewis.com
12         MORGAN LEWIS & BOCKIUS
           77 West Wacker Drive, Suite 500
13         Chicago, Illinois 60601-5094
           Telephone: (312) 324-1188
14

15         *Attorneys for Defendant*

16

17         DATED this 16th day of October, 2020.

18         TERRELL MARSHALL LAW GROUP PLLC

19         By:  __/s/ Beth E. Terrell, WSBA #26759___
               Beth E. Terrell, WSBA #26759
20             Email: bterrell@terrellmarshall.com
               936 North 34th Street, Suite 300
21             Seattle, Washington  98103
               Telephone:  (206) 816-6603
22             Facsimile:  (206) 319-5450
23

24         *Attorneys for Plaintiff and the Putative Class*

25

26

FIRST AMENDED CLASS ACTION COMPLAINT - 22
CASE NO. 2;20-cv-01298-JCC